IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2024 Session

**NICOLE MARIE NEUMAN v. PAUL P. PHILLIPS**

**Appeal from the Chancery Court for Williamson County**
**No. 20CV-49481J   Deanna B. Johnson, Judge**

————————————————————

**No. M2023-00813-COA-R3-CV**

————————————————————

This appeal concerns the attempt to register and enforce a foreign decree purporting to modify the terms of a divorce decree. For the reasons stated herein, we conclude that the trial court correctly determined that the foreign decree was void for lack of subject matter jurisdiction. Although appellant raised a second issue for review on appeal concerning attorney's fees, we conclude appellant is not entitled to any relief on the issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Sean R. Aiello, Franklin, Tennessee, for the appellant, Nicole Marie Neuman.

Paul P. Phillips, Castalian Springs, Tennessee, Pro se.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

This appeal follows an extensive history of litigation between these litigants, including at least twelve divorce and modification petitions filed in Tennessee, New York, and Michigan by Nicole Marie Neuman ("Mother"). Of note, a trial judge in Washington County, Utah ("Utah court"), entered a final decree of divorce on December 9, 2016, declaring Mother divorced from Paul P. Phillips ("Father"). A supplemental divorce decree was entered by the Utah court in 2017 ("2017 Divorce Decree"). Among other provisions, the 2017 Divorce Decree determined the custody arrangement for Mother and Father's minor child ("Child"). Both parties thereafter signed an agreement for relocation ("Relocation Agreement") allowing Mother and Father to relocate with Child from Utah

to Williamson County, Tennessee, and filed it with the Utah court on March 27, 2019. However, the Utah court did not attempt to enter the agreement as an order until April 29, 2022.

Litigation in Tennessee commenced on June 3, 2020, when Mother filed a request for registration and enforcement of the 2017 Divorce Decree as well as the Relocation Agreement in the Williamson County Chancery Court ("Tennessee court"). Then, on September 15, 2020, Mother filed a petition in the Tennessee court for modification of parenting agreement, seeking to modify the previously entered 2017 Divorce Decree as well as the Relocation Agreement. As part of her petition, Mother alleged that "[v]enue and jurisdiction are proper; the parties and child have been residents of Williamson County, Tennessee for more than six (6) months and this state is the home state of the child." Father's answer to the petition admitted to Mother's jurisdictional pleading.

Subsequently, Father filed a motion for civil contempt, to require Mother's compliance with the 2017 Divorce Decree, for Child to be enrolled and attend school in Williamson County, and for Father's attorney's fees and court costs. As part of this filing, Father argued that the Relocation Agreement was not made an order of the Utah court and therefore did not modify the 2017 Divorce Decree. The matter was heard on March 1, 2022, during which the Tennessee court determined Mother had moved from Tennessee to Michigan. On March 4, 2022, the Tennessee court entered an order finding that Father had moved from Williamson County, Tennessee, to Trousdale County, Tennessee, while also determining that Mother had moved from Williamson County.[1] The Tennessee court ordered Child be enrolled in school in Trousdale County, citing the 2017 Divorce Decree provision granting Father decision-making authority regarding Child's education. Although the Tennessee court maintained that the 2017 Divorce Decree remained the governing order in this case, the Tennessee court noted that, even under the Relocation Agreement, Father's home was to become the primary residence for school purposes if both parties moved outside Williamson County.

On March 2, 2022, Mother filed an ex parte motion to enforce the Relocation Agreement in the Utah court.[2] Thereafter, Father filed a motion with the Tennessee court to conduct a telephone conference with the Utah court pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to determine which court had jurisdiction over the child custody case and for attorney's fees and court costs. On March

---

[1] At the time of Father's initial motion to enroll Child in school in Williamson County, all the parties still resided in Williamson County. However, by the time the motion was heard, all the parties had moved from Williamson County, precipitating the Tennessee court's determination that Child should be enrolled in school in Trousdale County.

[2] Although Mother's motion requested enforcement of the Relocation Agreement rather than a modification of the child custody determination, the Utah court appears to have treated it as a petition to modify, because its April 29, 2022, order in response to Mother's motion operates to modify the terms of the child custody determination.

29, 2022, the respective judges of the Tennessee court and the Utah court conducted their telephone conference. During the conference, the judge of the Utah court agreed that he no longer had jurisdiction of the case because neither of the parties nor Child resided in Utah. Despite its recognition that it no longer had jurisdiction, the Utah court entered an order on April 29, 2022, providing:

> 1. A stipulated "Written Agreement for Relocation," was filed with this Court on March 27, 2019. This stipulated agreement met the requirements to be reduced to a Court order but was not done.
> 2. Therefore, the "Written Agreement for Relocation," should have been reduced back to an order of the Court back in or around March 29, 2019.
> 3. [Father] lodged an objection to reducing the stipulation to an order but was overruled.
> 4. Jurisdiction should be transferred to Williamson County, Tennessee.

Pursuant to these findings, the Utah court entered the Relocation Agreement as an order and purported to transfer jurisdiction to Tennessee ("2022 Relocation Order").

On May 6, 2022, Mother filed a notice of filing order for registration and enforcement of the 2022 Relocation Order in the Tennessee court. Thereafter, Mother filed a motion for the court to declare that the 2022 Relocation Order is the governing order in this case. On May 12, 2022, Father filed his response opposing Mother's request, as well as a petition for criminal contempt against her.

On May 16, 2023, Mother filed a notice of voluntary nonsuit, stating that she was "providing notice of voluntary nonsuit of her claim for modification of permanent parenting plan and child support" but that, "[w]ith this dismissal, [the] claims for registration of foreign order and enforcement of permanent parenting plan remain."

Following a two-day hearing, the Tennessee court entered an order finding that Father failed to meet his burden of proof for all counts of criminal contempt and that the 2022 Relocation Order was null and void for lack of subject matter jurisdiction. In support of voiding the 2022 Relocation Order, the Tennessee court reasoned that the Utah court lost jurisdiction when Mother filed her petition to modify in the Tennessee court on September 15, 2020, observing that it was undisputed Mother, Father, and Child all lived in Tennessee at the moment of filing. (TR *Id.*) The court highlighted several other moments in the course of litigation where it was clear that neither Mother, Father, nor Child had resided in Utah since at least six months prior to Mother filing her petition to modify on September 15, 2020. (TR *Id.*) This appeal followed.

## ISSUES PRESENTED

Upon reviewing the raised issues in Mother's brief, the dispositive issues in this appeal may be restated as follows:

I.      Whether the Tennessee court erred in ruling the 2022 Relocation Order is null and void for lack of subject matter jurisdiction of the Utah court.

II.     Whether the Tennessee court erred in declining to award Mother her attorney's fees.

## STANDARD OF REVIEW

"Review of a trial court's determinations on issues of law, such as the existence of subject matter jurisdiction and statutory construction, is de novo, without any presumption of correctness." *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013). If a party challenges a foreign court's order for lack of subject matter jurisdiction, "[t]his amounts to a collateral attack." *Moorcroft v. Stuart*, No. M2013-02295-COA-R3-CV, 2015 WL 413094, at *4 (Tenn. Ct. App. Jan. 30, 2015). Although we do not normally permit a collateral attack, it is permissible when the order in question is void. *Id*. An order is void when the issuing court lacks subject matter jurisdiction over the complainant. *Id*. Moreover, Tennessee law specifically permits a party to contest the registration and enforcement of a foreign decree by demonstrating that the "issuing court did not have jurisdiction[.]" Tenn. Code Ann. § 36-6-229(d)(1); Tenn. Code Ann. § 36-6-232(d)(1)(A).

## DISCUSSION

*Relocation Agreement*

Before turning to the merits of the case before us, we find it appropriate to briefly discuss the purpose and history of the UCCJEA as it applies to the issues presented here. As a predecessor to the UCCJEA, the Uniform Child Custody Jurisdiction Act ("UCCJA") was "[p]romulgated in 1968 in an effort 'to bring order out of the chaos that once marked interstate custody disputes when the courts of different states claimed authority to issue contradictory custody orders.'" *Staats v. McKinnon*, 206 S.W.3d 532, 544 (Tenn. Ct. App. 2006) (quoting *Yurgel v. Yurgel*, 572 So.2d 1327, 1329-30 (Fla. 1990)). Although every state legislature enacted a version of this act by 1986, differences in the language and construction of each state's version of the UCCJA undermined its ultimate goal of providing uniformity and reducing conflict between various jurisdictions. *Id*. In an effort "to sweep away the enormous body of conflicting decisions that had accreted over the past thirty years under the UCCJA[,]" the UCCJEA was introduced across the country to streamline "the language and structure of the underlying uniform statute." *Id*. In light of this context, we conclude that our analysis of Utah's version of the UCCJEA may be aided

by Tennessee's version of the UCCJEA as it has "substantially the same language . . . and both are derived from the same Model act." *Moorcroft*, 2015 WL 413094, at *6; *see Matter of Adoption of B.H.*, 474 P.3d 981, 986-87 (Utah 2020) (stating that the UCCJEA was intended to be uniform among all the states).

In the instant case, we have been asked to review if the Tennessee court erred in holding that the 2022 Relocation Order entered by the Utah court was void for lack of subject matter jurisdiction. Our analysis begins with Utah's statute concerning its exclusive, continuing jurisdiction over the child custody matters:

> (1) Except as otherwise provided in Section 78B-13-204, a court of this state that has made a child custody determination consistent with Section 78B-13-201 or 78B-13-203 has exclusive, continuing jurisdiction over the determination until:
>
> > (a) a court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
> >
> > (b) <u>a court of this state or a court of another state determines that neither the child, nor a parent, nor any person acting as a parent presently resides in this state.</u>
>
> (2) A court of this state that has exclusive, continuing jurisdiction under this section may decline to exercise its jurisdiction if the court determines that it is an inconvenient forum under Section 78B-13-207.
>
> (3) <u>A court of this state that has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 78B-13-201.</u>

Utah Code Ann. § 78B-13-202 (emphasis added). Under this provision, we highlight that a Utah court, or a court of another state, may extinguish Utah's exclusive, continuing jurisdiction upon a determination that both parents and child have left Utah. *See Staats*, 206 S.W.3d at 548-50. Although Utah does not incorporate the official comments under the UCCJEA,[3] our parallel statute does, offering helpful guidance in this matter:

---

[3] Tennessee adopted and incorporated the UCCJEA's official comments into its own version of the UCCJEA. Tenn. Code Ann. § 36-6-204. Although Utah did not formally pass similar legislation adopting and incorporating the official comments, the Court of Appeals of Utah has cited to the UCCJEA official

Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree state.

Tenn. Code Ann. § 36-6-217 cmt. 2 (paralleling UCCJEA § 202 cmt. 2).

Upon our review of the record, it is clear that Mother, Father, and Child left Utah and moved to Tennessee several years prior to the Utah court entering the 2022 Relocation Order. Moreover, when Mother filed her petition to amend the child custody agreement on September 15, 2020, she stated that all parties had moved from Utah to Tennessee and that jurisdiction was proper in Tennessee. Husband's response to Mother's petition admitted the very same.

In addition to Mother's and Father's initial pleadings, the Tennessee court indicated it was clear all parties had moved from Utah. On February 24, 2022, Father was served with a petition to enroll the 2017 Divorce Decree in Michigan. In that specific petition, Mother alleged she then lived in Michigan. During a hearing on March 1, 2022, the Tennessee court determined that Mother had moved to Michigan from Williamson County, Tennessee. On March 4, 2022, the Tennessee court entered an order permitting Father to enroll Child in school in Trousdale County, Tennessee, because he and Child had relocated there from Williamson County, Tennessee.

Moreover, the Tennessee court's final order and memorandum reflected that, during a UCCJEA conference held between the Tennessee court and Utah court on March 28, 2022, "[the judge of the Utah court] stated he no longer had jurisdiction over these matters and these parties, because neither party nor the child had lived in Utah for some time." Of course, the Utah court itself ultimately recognized that Tennessee should be exercising jurisdiction in this matter but inexplicably and inconsistently, in the same order, took action with respect to the parties and Child. In sum, the record demonstrates that, *prior* to the Utah court's entry of the Relocation Agreement as an order, there was no dispute among the parties or either jurisdiction that Mother, Father, and Child had not resided in Utah for several years.[4] As a result, the Utah court had lost exclusive, continuing jurisdiction pursuant to Section 78B-13-202(1)(b) of the Utah Code Annotated. *See Staats*, 206 S.W.3d at 548-49 (determining that the foreign state's exclusive, continuing jurisdiction terminated at the time a petition to modify was filed in Tennessee because no party had lived in foreign state for over eleven months); *see also Roper v. Roper*, 594 S.W.3d 211, 224-25 (Ky. Ct.

_____

comments before in support of its analysis, and incidentally, we observe from one Utah decision that the specific comment under the UCCJEA cited by that court is the same we reference in this Opinion. *In re Z.Z.*, 310 P.3d 772, 777 (Utah Ct. App. 2013) (citing to UCCJEA § 202 cmt. 2 (1997)).

[4] As such, it is of course clear from the record that neither of the parents nor Child lived in Utah when Mother filed her March 2, 2022, request with the Utah court for that court to enforce the Relocation Agreement, which had, at the time, yet to be entered as an order.

App. 2019), *modified* (Jan. 18, 2020) (concluding that its own court lacked modification jurisdiction because all parties had moved away from Kentucky); *Joshua A. v. Shaquanda T.*, 200 N.Y.S.3d 347, 348 (N.Y. App. Div. 2023) (affirming that the family court lacked jurisdiction because none of the parties lived in New York at the time the petition to modify was filed and none of the parties disputed that fact); *Weliver v. Ortiz*, 291 A.3d 427, 435-38 (Pa. Super. Ct. 2023) (concluding that the trial court erred by asserting jurisdiction over a child custody modification where all parties pled that they no longer lived in Pennsylvania).

Alternatively, the Utah court could have had jurisdiction to enter the Relocation Agreement as an order "if it has jurisdiction to make an initial determination under Section 78B-13-201." Utah Code Ann. § 78B-13-202(3). Section 78B-13-201 of the Utah Code Annotated accords jurisdiction if

> (a) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>
> (b) a court of another state does not have jurisdiction under Subsection (1)(a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 78B-13-207 or 78B-13-208; and
>
>> (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent have a significant connection with this state other than mere physical presence; and
>> (ii) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
>
> (c) all courts having jurisdiction under Subsection (1)(a) or (b) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 78B-13-207 or 78B-13-208; or
>
> (d) no state would have jurisdiction under Subsection (1)(a), (b), or (c).

Utah Code Ann. § 78B-13-201(1). Here, the record does not support a finding of jurisdiction for the Utah court with respect to these bases. Per the pleadings of both parents stating that Child had lived in Williamson County for over six months, Tennessee had become the home state of Child by the time Mother filed her petition to modify on September 15, 2020. Moreover, Tennessee did not decline jurisdiction in this matter, and as we already noted, during the UCCJEA telephone conference between the respective

judges of the Tennessee court and the Utah court, the judge of the Utah court agreed that he no longer had jurisdiction of the case because neither of the parties nor Child resided in Utah. Therefore, the Utah court lacked jurisdiction to modify the custody order pursuant to section 78B-13-201 of the Utah Code Annotated.

Because the Utah court had already lost its exclusive, continuing jurisdiction and did not have jurisdiction to make an initial custody determination at the time of the 2022 Relocation Order's entry, the Tennessee court was correct in concluding that the Utah court's 2022 Relocation Order was void for lack of subject matter jurisdiction. Indeed, we highlight that our conclusion herein parallels the Utah court's own acknowledgements, which it made in the UCCJEA conference and again in the 2022 Relocation Order, that Tennessee, not Utah, has jurisdiction over the instant child custody case.

*Attorney's Fees*

In her brief, Mother argues she is entitled to attorney's fees in relation to her attempt at enforcing the 2022 Relocation Order, as well as in relation to her defense of Father's criminal contempt petition. As to the specific matter of attorney's fees concerning the litigation surrounding the 2022 Relocation Order, Mother provides no citations whatsoever to the record. Beyond that, though, we observe that the statute she claims authorizes her to recover attorney's fees expressly limits recovery to the "prevailing party[.]" Tenn. Code Ann. § 36-5-103(c). Of course, in light of our disposition herein, Mother is not a prevailing party with respect to her attempt to register and enforce the 2022 Relocation Order. She is thus not entitled to any attorney's fees concerning that issue.[5]

As for Mother's request for fees on the criminal contempt matter, this section of argument only contains a single citation to the record, albeit through an "*Id.*" reference that ostensibly relates back to a record citation from a prior section of argument. In any event, the citation itself is simply offered as support for the notion that Father failed to prove Mother was in contempt. There is no actual citation concerning a denial of attorney's fees in relation to the contempt matter, and Mother's brief fails to indicate where, if at all, she requested attorney's fees regarding her defense of the contempt petition. Moreover, it is unclear from the record transmitted to us on appeal whether she actually ever requested fees in relation to the contempt matter. Regardless, we note that a request for attorney's fees associated with the defense of a criminal contempt petition may be granted at the trial court's *discretion. See* Tenn. Code Ann. § 36-5-103(c). Here, Mother's brief simply relies upon the fact that she successfully prevailed against Father's allegations of criminal

---

[5] In connection with our discussion, we observe that Mother has also requested attorney's fees in association with the litigation of this appeal. However, Mother failed to include this request in her statement of issues. As we have previously stated, requests for attorney's fees that are not raised in the statement of issues are not properly before this Court. *See Mathes v. N.J. Ford & Sons Funeral Home, Inc.,* 680 S.W.3d 208, 213-14 (Tenn. Ct. App. 2023); *see also Gibson v. Bikas*, 556 S.W.3d 796, 810 (Tenn. Ct. App. 2018). Therefore, we conclude the issue of appellate attorney's fees has been waived.

contempt. Assuming arguendo she had actually requested an award of attorney's fees in relation to the contempt matter, which again, is not clear from this record, Mother does not attempt to explain how the Tennessee court's failure to award her attorney's fees would constitute an abuse of discretion. She offers no argument concerning the matter but simply states in a conclusory manner that she "should be entitled to an award." In light of these omissions, we conclude that Mother has waived her argument on appeal concerning attorney's fees associated with her criminal contempt defense.

## CONCLUSION

For the foregoing reasons, we affirm the Tennessee court's refusal to register and enforce the 2022 Relocation Order and conclude that Mother is not entitled to any relief concerning her raised issue pertaining to attorney's fees.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE